# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DWAYNE A. MOTTE,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>CAROLYN W. COLVIN,  )<br>Acting Commissioner of the Social  )<br>Security Administration,  )<br>)<br>Defendant.  ) | Case No. CIV-13-201-SPS |

## OPINION AND ORDER

The claimant Dwayne A. Motte requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on December 23, 1959, and was fifty-two years old at the administrative hearing (Tr. 51, 52). He completed twelfth grade and has worked as a gas servicer for a gas company (Tr. 55, 83). The claimant alleges he has been unable to work since December 28, 2009 due to right arm, elbow and carpal tunnel (Tr. 216).

### Procedural History

On May 5, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 225). His application was denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated May 7, 2012 (Tr. 18-36). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, he could lift or carry up to 15 pounds with the right arm, both occasionally and frequently, with the ability to lift up to 50 pounds overall, and with pushing and pulling limitations consistent with lifting and carrying limitations; stand and/or walk for 8 hours out of an 8 hour day; and sit for 8 hours out of an 8 hour day. The ALJ further found that the claimant: could frequently climb stairs; could not climb ladders, ropes, and scaffolding;

could occasionally reach with the right arm in all directions, and handle and finger with the right hand; occasionally tolerate exposure to hazardous or fast machinery, and unprotected heights; and frequently tolerate exposure to driving (Tr. 24). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work in the national economy the claimant could perform, *i. e.,* parking lot attendant, toll collector, and usher (Tr. 35).

**Review**

The claimant contends that the ALJ: (i) failed to properly analyze the opinion of his treating physician, Dr. Martin; and (ii) failed to properly formulate his RFC. The Court agrees with the claimant's first contention and the decision of the Commissioner should therefore be reversed.

The medical records relevant to this appeal reveal that the claimant was injured at work on June 8, 2009 when picking up a gas meter with his right hand (Tr. 455). The claimant sought treatment for this injury from Concentra Medical Centers beginning October 19, 2009 (Tr. 442-455). On February 23, 2010, Dr. Jeffrey Morris recommended the claimant get a second opinion from an upper extremity surgeon after the claimant had been progressing very slowly with the current therapy (Tr. 443).

Dr. Brian Chalkin at The Orthopaedic Center treated the claimant from March 1, 2010 through January 26, 2011. Dr. Chalkin administered differential injections into the lateral extensor musculature on March 1, 2010 and a steroid injection into the right radial tunnel on March 22, 2010 (Tr. 497-498, 499-500). After some success with the steroid injection, Dr. Chalkin recommended the claimant undergo a right radial tunnel release

and a lateral epicondyle release (Tr. 501). On May 18, 2010 Dr. Chalkin performed a right lateral epicondyle release at the elbow; a right elbow partial ostectomy, lateral epicondyle; and a right radial tunnel release with decompression of the radial nerve (Tr. 462-464). On September 1, 2010, Dr. Chalkin recommended the claimant return to work at full duty with one more month of therapy for strengthening (Tr. 506). On January 26, 2011, Dr. Chalkin released the claimant from his care and stated the claimant should not lift, push, pull, or grasp anything greater than 15 pounds with the right arm as a permanent restriction and that he believed the claimant was a candidate for job retraining (Tr. 687-688).

On March 21, 2011, Dr. David Martin evaluated the claimant and noted his upper right extremity was weak, tender throughout the forearm, and that he had a weak grip (Tr. 677). Dr. Martin's impression was right forearm and hand pain and weakness from injury and surgery, possible complex regional pain syndrome, and depression (Tr. 677). Dr. Martin referred the claimant to Dr. Eric Edgar for an EMG regarding his right arm pain (Tr. 545).

On March 30, 2011 Dr. Edgar performed nerve conduction studies and an EMG of the claimant's right arm. His impression was the studies were normal and there was no electrophysiologic evidence of nerve entrapments, cervical radiculopathy, brachial plexopathy, or radial mononeuropathy (Tr. 545-546). Dr. Edgar also performed a comprehensive medical and neurological examination and made a clinical diagnosis of complex regional pain syndrome due to the claimant's erythema, edema, hyperhidrosis, and allodynia (Tr. 547-548).

On April 21, 2011, Dr. Martin noted the claimant's right arm and hand had full extension, though full flexion caused some discomfort in his forearm; he had a weak grip in his right hand; and he had puffiness and moisture on his right hand. Dr. Martin opined the claimant was 100% disabled from his occupation (Tr. 673). On June 21, 2011, Dr. Martin noted the claimant's subjective reports of constant pain from right elbow to right hand, occasional swelling which was improving, increased pain with use of his hand, inability to grip well, and inability to use his right arm repetitively because of pain. A physical examination of the claimant's right arm showed that with full extension, he could not quite get to 180º, but could only flex to about 160 or 170º because of pain, and that pressure over the claimant's hand and forearm caused increased pain. He opined the claimant was 100% disabled (Tr. 672). On September 30, 2011, Dr. Martin noted the claimant's subjective report that his right upper extremity symptoms were the same and he still had lots of pain and burning in his hand and forearm that worsened with movement. A physical examination revealed that slight pressure on the claimant's hand caused worsening of his pain and burning sensation, that the claimant could not shake Dr. Martin's right hand, his grip was week due to pain, he could raise his arm above his head, he had good range of motion of the shoulder, and he could flex his right elbow to only 160º. Dr. Martin stated he had no further suggestions on how to treat claimant's complicated problem, and again opined the claimant was 100% disabled from his and any other occupation (Tr. 716). In an addendum to his office note of September 30, 2011 Dr. Martin stated he did not expect any improvement to the claimant's condition, and his prognosis for return to work was poor (Tr. 717).

At the administrative hearing, the claimant testified that he was unable to wash dishes unless it was extremely light such as a fork or a spoon, he was unable to lift a gallon of milk, and that the heaviest item he could lift at home on a regular basis is a tv remote, cup of coffee, or a 16.9 ounce bottle of water (Tr. 69-72). He testified he has use of only his middle finger, index finger, and thumb on his right hand and that he can feel with his other fingers but has no strength (Tr. 69-71). He stated he has radiating pain from his wrist to his elbow when he tries to lift any significant weight with his right arm and he experiences pain and a sensation like contracting muscles when typing (Tr. 70). He testified he is unable to use his right arm to reach because his arm won't extend straight out (Tr. 73).

The medical opinion of a treating physician such as Dr. Martin is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely,

he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion, the ALJ determined that the claimant's right forearm pain, status post injury and subsequent right elbow/forearm surgery and right carpal tunnel syndrome were severe impairments, and that his acromioclavicular joint arthropathy was non-severe (Tr. 24). The ALJ gave "little weight" to Dr. Martin's assessment because he found it to be inconsistent with the opinion of Dr. Chalkin who determined a 15 pound weight restriction of the right arm and indicated with such restriction that the claimant might be a candidate for job retraining (Tr. 32-33). The ALJ did not, however, specify medical evidence that he found to be inconsistent with Dr. Martin's assessment. Thus, although the ALJ acknowledged that he was required to perform a proper *analysis* of the evidence, instead he merely provided a general *recitation* of the evidence and concluded generally that Dr. Martin's findings were inconsistent therewith (Tr. 32-33).

The ALJ was clearly not required to give controlling weight to any opinion by Dr. Martin to the effect that the claimant was unable to work, *see* 20 C.F.R. § 416.927(e)(1) ("A statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled."), but should nevertheless have determined the proper weight to give such opinions rather than rejecting them outright. *See Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("An opinion on an issue reserved to the Commissioner is not entitled to special significance, 20 C.F.R. § 416.927(e), but the

-8-

ALJ 'is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.'"), *quoting* Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3. The ALJ's finding that Dr. Martin's opinions were inconsistent with medical evidence might have justified the refusal to accord controlling weight if the ALJ had specified any inconsistent evidence on which he relied, *see, e. g.*, Langley, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins,* 350 F.3d at 1300; s*ee also Wise v. Barnhart,* 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was 'inconsistent with the credible evidence of record,' but he fails to explain what those inconsistencies are."), but the ALJ would have nevertheless been required to determine the proper weight to give those opinions by applying the *Watkins* factors. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927."), *quoting Watkins,* 350 F.3d at 1300. The ALJ failed to perform any of this analysis.

Because the ALJ failed to properly evaluate Dr. Martin's opinions in accordance with the controlling standards, the decision of the Commissioner should be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments

to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the ruling of the Commissioner of the Social Security Administration is REVERSED and the case REMANDED for further proceedings not inconsistent herewith.

**DATED** this 30th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**